# EXHIBIT H

Electronically Received 06/16/2026 04:23 PM

Alan Harris (SBN 146079)
David Garrett (SBN 160274)
Priya Mohan (SBN 228984)
HARRIS & RUBLE
655 North Central Avenue 17th Floor
Glendale California 91203
Tel: 323.962.3777
Fax: 323.962.3004
harrisa@harrisandruble.com
dgarrett@harrisandruble.com
pmohan@harrisandruble.com

Attorneys for Plaintiff
Ricardo Yearwood

FILED
Superior Court of California
County of Los Angeles
06/16/2026
David W. Slayton, Executive Officer / Clerk of Court
By: _____ R. Lozano _____ Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| RICARDO YEARWOOD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PHOK PRODUCTIONS, LLC, a New York Limited Liability Company; PETER PHOK, an individual; and DOE 1 through and including DOE 10,<br><br>Defendants. | Case No:  25STCV37676<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>*Assigned to the Hon. Timothy P. Dillon, Dept. 15*<br><br>1.    Cal. Lab. Code (the "Code") §§ 201.3, 201.5, 203, 204 and/or 204b Continuing Wages<br><br>2.    Code § 226(a), Failure to Provide Complete Wage Statements, and Wage Orders 4 and/or 12<br><br>3.    Code § 226.7, 512 and Wage Orders 4 and/or 12, Failure to Provide Meal Periods or Rest Breaks<br><br>4.    Code §§ 1194 and 1198 and Wage Orders 4 and/or 12, Failure to Pay Proper Overtime and Minimum Wages<br><br>5.    Code § 2802 and Wage Orders 4 and/or 12, Failure to Reimburse Business Expenses<br><br>6.    Bus & Prof. Code §§ 17200 *et seq.* – Restitution<br><br>7.    Breach of Implied Employment Contract<br><br>8.    Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Ricardo Yearwood  ("Yearwood" or "Plaintiff"), by and through his undersigned attorneys, on information and belief, alleges as follows:

## JURISDICTION AND VENUE

1.     This is a civil action seeking unpaid wages, [1] damages, statutory penalties, and attorneys' fees as well as reimbursement of costs and such other relief as may be appropriate in the circumstances.

2.     Venue as to Defendants is proper in this judicial district, pursuant to California Code of Civil Procedure sections 395(a) and 395.5.  Defendants maintain an office, transact business, have an agent, or are found in the County of Los Angeles and are within the jurisdiction of this Court for purposes of service of process.

## THE PARTIES

3.     Plaintiff Yearwood is an individual, who, during the time periods relevant to this Complaint, was and is a resident of the State of California, routinely working within the County of Los Angeles.

4.     Defendant PHOK PRODUCTIONS, LLC ("PPLLC") is a New York Limited Liability Company, which at all times relevant herein, conducted business within the County of Los Angeles, State of California and produced a non-union motion picture entitled "BAILAR CONTIGO # 22-1202" ("hereinafter the Production").

5.     Defendant Peter Phoc (the "Individual Defendant") is the Founder, Owner, and Managing Member of PPLLC, as well as a resident of the State of California, where he acts as the Registered Agent for Service of Process for PPLLC.

6.     Defendants Doe One through and including Doe Ten are sued herein under the provisions of section 474 of the California Code of Civil Procedure. Plaintiff is unaware of the true names, identities or capacities, whether corporate, individual or otherwise, of said fictitiously named defendants, but leave of Court will be prayed to amend this pleading to insert the same herein when finally ascertained. Plaintiff is informed, believes and thereupon alleges that each of the fictitiously named

---

[1] Under both Wage Order 4 and 12, "'Wages' includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation."

Defendants is a person, which during the relevant time period, maintained a place of business in the County of Los Angeles of the State of California. Defendants PPLLC, the Individual Defendant, and Does One through and including Doe Ten are hereinafter collectively referred to as Defendants. Defendants are "temporary services employers" as defined by California Labor Code (the "Code") § 201.3 and required to pay workers no less frequently than weekly.

7. Plaintiff is informed and believes, and based thereon alleges, that each Defendant acted in all respects pertinent to this action as the agent of the other Defendants, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each Defendant are legally attributable to the other Defendants. The Defendants named herein as DOE 1 through DOE 10 are and were persons acting on behalf of, or acting jointly with, Defendants, who violated, or caused to be violated, one or more provisions of the California Labor Code as alleged herein.

8. Defendants are "temporary services employers"[2] as defined by Code § 201.3 and required to pay workers no less frequently than weekly. Section 201.3 provides, in part:

> **(a)** For purposes of this section, the following definitions apply:
> **(1)** "Temporary services employer" means an employing unit that contracts with clients or customers to supply workers to perform services for the clients or customers and that performs all of the following functions:
> **(A)** Negotiates with clients and customers for matters such as the time and place where the services are to be provided, the type of work, the working conditions, and the quality and price of the services.
> **(B)** Determines assignments or reassignments of workers, even if workers retain the right to refuse specific assignments.
> **(C)** Retains the authority to assign or reassign a worker to another client or customer when the worker is determined unacceptable by a specific client or customer.
> **(D)** Assigns or reassigns workers to perform services for clients or customers.
> **(E)** Sets the rate of pay of workers, whether or not through negotiation.
> **(F)** Pays workers from its own account or accounts.
> **(G)** Retains the right to hire and terminate workers.
> . . .
> **(4)** "Client" and "customer" mean the person with whom a temporary services employer has a contractual relationship to provide the services of one or more individuals employed by the temporary services employer.
>
> **(b)(1)(A)** Except as provided in paragraphs (2) to (5), inclusive, if an employee of a temporary services employer is assigned to work for a client, that employee's wages are due and payable no less frequently than weekly, regardless of when the assignment ends,

---

[2] Under both Wage Orders 4 and 12, an "'Employer' means any person as defined in Section 18 of the Labor Code, who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person."

and wages for work performed during any calendar week shall be due and payable not later than the regular payday of the following calendar week. A temporary services employer shall be deemed to have timely paid wages upon completion of an assignment if wages are paid in compliance with this subdivision.
. . .
**(c)** A temporary services employer who violates this section is subject to the civil penalties provided for in Section 203 and to any other penalties available at law.
**(d)** This section shall not be interpreted to limit any rights or remedies otherwise available under state or federal law.

Code § 201.3.

9.      As a "temporary services employer,"  Defendants have acted as an employing unit which contracts with clients to supply workers to perform services for various entities as their clients. Defendants perform all of the following functions: (A) Negotiates with clients and customers for matters such as the time and place where the services are to be provided, the type of work, the working conditions, and the quality and price of the services (see, e.g. Exhibits 1-3); (B) Determines assignments or reassignments of workers, even if workers retain the right to refuse specific assignments; (C) Retains the authority to assign or reassign a worker to another client or customer when the worker is determined unacceptable by a specific client or customer; (D) Assigns or reassigns workers to perform services for clients or customers; (E) Sets the rate of pay of workers, whether or not through negotiation; (F) Pays workers from its own account or accounts; and (G) Retains the right to hire and terminate workers.

10.     **Exhibit 1** is a sample of an ad agency script and storyboards for a television commercial. **Exhibit 2** is a partially redacted, typical Association of Independent Commercial Producer's ("AICP") Film Production Cost Summary for a Neutrogena commercial.

11.     A more recent AICP Bid Form is attached as **Exhibit 3**.  Such Bid Forms are prepared for consideration by potential clients or the advertising agency.

12.     Plaintiff is informed and believes and thereon allege that all Defendants, including the fictitious Doe defendants, were at all relevant times acting as actual agents, conspirators, ostensible agents, alter egos, partners and/or joint venturers and/or employees of all other defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent authorization and ratification of their co-defendants; however, each of these allegations are

deemed "alternative" theories whenever not doing so would result in a contradiction with other allegations.

## GENERAL ALLEGATIONS

13.     Defendants employed Plaintiff on or about Friday, December 21, 2022. Plaintiff was not paid for all hours worked.  No earlier than on January 10, 2023, a wage statement was created to memorialize payment to  Plaintiff for some of his wages, but in tardy fashion.  According to the wage statement, the faux "Payment Period" for the Production was a seven-day period, beginning on Sunday, December 18, 2022, and ending on Saturday, December 24, 2022. Defendants were required to pay him by the next week, on or before Friday, December 30, 2022. However, dehors the most expansive requirements of Code § 204, Plaintiff Yearwood's paycheck was not prepared until on or after January 10, 2022. **Exhibit 4**  is a copy of the wage statement issued to Yearwood for the Production.  No premium wages were paid to Yearwood for the defense failure to provide him with compliant rest breaks or meal periods. As Yearwood worked for at least 13.5 hours, he was entitled to at least two uninterrupted meal periods and three uninterrupted rest breaks.   Plaintiff was not properly provided his rest breaks or meal periods for his work.  His premium wage for the defense failure to provide three compliant ten minute rest periods during his many hours of work should be compensated at his regular hourly rate of at least $42.85. His premium wage for the defense failure to provide two compliant thirty minute meal periods during his many hours of work should be compensated at his regular hourly rate of at least $42.85.

14.     The Defendants' illegal policies of Defendants routinely result in tardy payment of wages owing the crewmembers.  These policies of Defendants include failing to devote sufficient capital to the payroll function and contracting with remote, third-party payroll companies such as such as NEW CAPS, LLC  ("NEW CAPS") of 1560 Broadway, New York, New York, in such a way as to have Defendants undertake responsibility for prompt and correct payment of wages owing to the Plaintiff and putative Class Members without establishing a process to timely issue the paychecks.  Under Defendants' complicated structure, wage payments could not be made until: (1) onboarding paperwork and timecards were completed and reviewed by a number of persons hired by Defendants as temporary employees; (2) the Defendants' temporary employee sent the onboarding paperwork and timecards to

NEW CAPS for its review; (3) NEW CAPS prepared a draft invoice and sent it to Defendants; (4) the draft was returned to Defendants for their review, the Defendants either making corrections to the proposed invoice for payroll or advising NEW CAPS to prepare the final invoice without further modification; (5) the final invoice is sent from NEW CAPS to the Defendants; (6) the Defendants pay the final invoice, including the payroll company's fees as well as the total amount of the wages and taxes; (7) NEW CAPS prepares the documents such as Exhibit 4 and either mails hard copy checks to the some of the crew or initiates the "direct deposit" of funds to others in the crew with which it had made prior arrangement for such payments. As NEW CAPS did not extend credit to production companies such as PPLLC, the already cumbersome process was routinely delayed. In either case, there was further delay in the mailing process and the "Direct Deposit" process routinely caused delay when the worker's bank delayed making the funds available for withdrawal by its customer, the worker.

15. The process of preparing the timecards was subject to delay as, for example, neither Defendants nor their contracting parties instructed class members how to fill out the required forms which had to be completed during either: (1) the onboarding process (which had to be completed before the timecards could be filled out) or (2) the timecards themselves.

16. The onboarding process required each Class Member to review and prepare a Form W-4 and a Form I-9. The latter required a *third-party* representative of Defendants, generally a temporary worker such as another day player, to review of each Class Member's Identity and Employment Authorization paperwork. Thereafter, the Employee had to execute the document and the employer's representative was required to Certify "under penalty of perjury, that (1) I have examined the document(s) presented by the above-named employee, (2) the above-listed document(s) appear to be genuine and to related to the employee named, and (3) to the best of my knowledge the employee is authorized to work in the United States." With respect to the Form W-4, the Employee's Withholding Certificate, this is another government form to be prepared and signed by both the Employee and the Employer.

17. The next step in the process is for the timecards to be distributed to and completed by each Class Member before being approved by Defendants. In this case, and routinely in the motion picture industry in California, the blank timecards were provided by the Payroll Company, here

Wrapbook, either electronically with the employee using an app on their personal cell phone, or in hard copy, later transcribed by a third person into an electronic database of information.

18. The timecard provides room for the Employee to give information for a seven-day workweek. After the timecard is completed, it is reviewed and approved by a representative of the employer. Significantly, the timecard has a place for the employee to record the beginning and end times for the first and second meals, but nowhere to indicate whether or not the required rest breaks were provided.

19. After the timecards are completed and reviewed, the data are provided to the payroll company and reviewed by a payroll clerk for completeness and accuracy, the payroll clerk prepares a "draft invoice" which is sent to the production company for its review and approval. After that step, the draft invoice is marked as approved and returned to the payroll company.

20. The next step is for the production company to pay NEW CAPS for the amount of the approved invoice, adding to that payment reimbursement to NEW CAPS for its charges. These funds come from either Defendants' working capital or from payments from a third party for whom the motion picture is being created, or its advertising agency or record label.

21. Historically and likely in this case, the payments to Defendants are made in three tranches: the first at signing by PPLLC of the contract to act as the production company; the second at the first day of principal photography; the third and final payment on delivery of the finished product from Defendant to the person for which the motion picture has been prepared. Either receipt of the final payment or return of deposits for the project at issue is often needed by the production company in order for it to meet the final crew payroll, a reality which causes delays in payment of wages to the crew.

22. The next step in the process – transferring the payments owing to the payroll company— must be completed before the payroll company will prepare and release the paychecks to the production company for mailing or mail the paychecks directly to the worker. In no case is a record maintained regarding the date of mailing. Again, some of the crew receive their wages by Direct Deposit.

23. Although Plaintiff Yearwood should have been paid in full for his accrued wages, provided proper, uninterrupted meal and rest breaks, and issued final wages no later than as required by Code §§ 201, 201.3, 201.5, and/or 204, wages remain unpaid in the full amount owing. The final

payment did not fully compensate Plaintiff for all outstanding wages.

24.     Plaintiff and many Class Members have as of the date of filing of this Complaint not been fully compensated for work performed for the Defendants. On information and belief, Defendants did not pay many of its employees a premium wage on account of a missed, tardy, combined or truncated rest break or meal period, an unlawful business practice.  See, Safeway v. Sup. Ct., 238 Cal. App. 4th 1138 (2015).

25.     Plaintiff and many crew members have not been paid accrued premium wages owing for the non-provision of compliant rest breaks or meal periods, as required by Naranjo v. Spectrum Security Services, Inc., 15 Cal. 5th 1056, 1068 (2024) ("section 203 and section 226 claims can be brought based on unpaid and unreported missed-break premium pay.")

26.     Plaintiff and many Class Members were required to always keep their walkie talkie radios and/or cell phones with them, including during faux rest breaks and meal periods.  Plaintiffs and many Class Members were aware of and followed the industry practice under which they were expected to and did  monitor the devices and respond when called or in receipt of a text or email. Some breaks were simply not provided at all. Under Augustus v. ABM Sec. Servs. Inc., 2 Cal. 5th 257, 260 (2016), this policy denied Plaintiff and many others the ability to take legally compliant rest breaks or meal periods as required by California law.  **Exhibit 5** hereto is a partially redacted sample of call sheets for other California Motion Pictures, reflecting the industry practice of assigning specific walkie talkie channels to different departments, enabling ready communication by department when necessary and broad communications to all departments or groups of departments on other occasions.

27.     Defendants were joint employers of Plaintiff Yearwood and Class Members. Employees and representatives of Defendants were on location and worked alongside Plaintiff and Class Members, directing their work, providing feedback and making final decisions.  They gave specific instructions on the way work was to be completed and reviewed and approved such work.  They had creative and operational authority over the Production and Plaintiff's job.

28.     At all relevant times mentioned herein, Wage Order 4 and/or 12 of the California Industrial Welfare Commission applied to Plaintiff and Class Members.  In part, the Wage Order reflects employer obligations regarding hours and days of work, reporting time pay, records, meal periods and

rest periods (obligations which the employer, here, failed to fulfill). Wage Order 12 provides, in relevant part:

**3. Hours and Days of Work.**
(A) Daily Overtime - General Provisions
(1) The following overtime provisions are applicable to employees 18 years of age or over and to employees 16 or 17 years of age who are not required by law to attend school and are not otherwise prohibited by law from engaging in the subject work. Such employees shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives one and one-half (1.5) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek. Eight (8) hours of labor constitutes a day's work. Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime as follows:
(a) Employees may be employed up to a maximum of sixteen (16) hours including meal periods in any one day from the time they are required and do report until dismissed, provided the employee is compensated for such overtime at not less than:
(1) For daily employees and weekly employees, excluding weekly employees guaranteed more than forty (40) hours a workweek and "on call" employees, one and one-half (1.5) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including twelve (12) hours in any one workday, and for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek; and
(2) Double the employee's regular rate of pay for all hours worked in excess of twelve (12) hours in any workday, and for all hours worked in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek.
(3) Overtime payments shall not be compounded and all payments made by the employer for daily overtime on the basis herein above specified shall be applied toward any sum for weekly overtime.
(4) The overtime rate of compensation required to be paid to a nonexempt full-time salaried employee shall be computed by using the employee's regular hourly salary as one fortieth (1/40) of the employee's weekly salary. The overtime rate of compensation required to be paid to a nonexempt full-time salaried employee shall be computed by using the employee's regular hourly salary as one-fortieth (1/40) of the employee's weekly salary.
. . .

**7. Records.**
(A) Every employer shall keep accurate information with respect to each employee including the following:
(1) Full name, home address, occupation and social security number.
(2) Birth date, if under 18 years, and designation as a minor.
(3) Time records showing when the employee begins and ends each work period. Meal periods, split shift intervals and total daily hours worked shall also be recorded. Meal periods during which operations cease and authorized rest periods need not be recorded.
(4) Total wages paid each payroll period, including value of board, lodging, or other compensation actually furnished to the employee.
(5) Total hours worked in the payroll period and applicable rates of pay. This information shall be made readily available to the employee upon reasonable request.
(6) When a piece rate or incentive plan is in operation, piece rates or an explanation of the incentive plan formula shall be provided to employees. An accurate production record shall be maintained by the employer.
(B) Every employer shall semimonthly or at the time of each payment of wages furnish each employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately, an itemized statement in writing showing: (1) all

deductions; (2) the inclusive dates of the period for which the employee is paid; (3) the name of the employee or the employee's social security number; and (4) the name of the employer, provided all deductions made on written orders of the employee may be aggregated and shown as one item.

(C) All required records shall be in the English language and in ink or other indelible form, properly dated, showing month, day and year, and shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California. An employee's records shall be available for inspection by the employee upon reasonable request.

. . .

**12. Rest Periods.**

(A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3.5) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

(B) If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period is not provided.

Cal. Code of Regs., tit. 8, § 11120 ("Wage Order 12").

29.     At all times relevant herein, section 201.5 of the Code provided in part:

(a) For purposes of this section, the following definitions apply:

(1) "An employee engaged in the production or broadcasting of motion pictures" means an employee to whom both of the following apply:

(A) The employee's job duties relate to or support the production or broadcasting of motion pictures or the facilities or equipment used in the production or broadcasting of motion pictures.

(B) The employee is hired for a period of limited duration to render services relating to or supporting a particular motion picture production or broadcasting project, or is hired on the basis of one or more daily or weekly calls.

(2) "Daily or weekly call" means an employment that, by its terms, will expire at the conclusion of one day or one week, unless renewed.

(3) "Next regular payday" means the day designated by the employer, pursuant to Section 204, for payment of wages earned during the payroll period in which the termination occurs.

(4) "Production or broadcasting of motion pictures" means the development, creation, presentation, or broadcasting of theatrical or televised motion pictures, television programs, commercial advertisements, music videos, or any other moving images, including, but not limited to, productions made for entertainment, commercial, religious, or educational purposes, whether these productions are presented by means of film, tape, live broadcast, cable, satellite transmission, Web cast, or any other technology that is now in use or may be adopted in the future.

(b) An employee engaged in the production or broadcasting of motion pictures whose employment terminates is entitled to receive payment of the wages earned and unpaid at the time of the termination by the next regular payday.

(c) The payment of wages to employees covered by this section may be mailed to the employee or made available to the employee at a location specified by the employer in the county where the employee was hired or performed labor. The payment shall be deemed to have been made on the date that the employee's wages are mailed to the

10
FIRST AMENDED CLASS ACTION COMPLAINT

employee or made available to the employee at the location specified by the employer, whichever is earlier.

(d) For purposes of this section, an employment terminates when the employment relationship ends, whether by discharge, lay off, resignation, completion of employment for a specified term, or otherwise.

(e) Nothing in this section prohibits the parties to a valid collective bargaining agreement from establishing alternative provisions for final payment of wages to employees covered by this section if those provisions do not exceed the time limitation established in Section 204.

Code § 201.5.

30.     Defendants employed individuals such as Plaintiff and Class Members to work on the Production, yet Defendants often failed to pay timely or fully many of them, all in violation, inter alia, of Code sections 201, 201.3, 201.5, 204 and/or 204b.

31.     At all relevant times mentioned herein, section 203 of the Code provided:

If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.6, 201.8, 201.9, 202 and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until action therefore is commence; but the wages shall not continue for more than 30 days.

Code § 203. By failing to pay Plaintiff and many Class Members all wages when due at termination, Plaintiff and Class Members are entitled to continuing wages pursuant to section 203 of the California Labor Code.

32.     At all times relevant herein, section 204 of the Code provided in part:

All wages, other than those mentioned in Section 201, 201.3, 202, 204.1, or 204.2, earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays. Labor performed between the 1st and 15th days, inclusive, of any calendar month shall be paid for between the 16th and the 26th day of the month during which the labor was performed, and labor performed between the 16th and the last day, inclusive, of any calendar month, shall be paid for between the 1st and 10th day of the following month.

Code § 204.

33.     At all times relevant herein, section 204b of the Code provided in part:

Section 204 shall be inapplicable to employees paid on a weekly basis on a regular day designated by the employer in advance of the rendition of services as the regular payday.

Labor performed by a weekly-paid employee during any calendar week and prior to or on the regular payday shall be paid for not later than the regular payday of the employer for such weekly-paid employee falling during the following calendar week.

Labor performed by a weekly-paid employee during any calendar week and subsequent to the regular payday shall be paid for not later than seven days after the regular payday of the employer for such weekly-paid employee falling during the following calendar

week.

Code § 204b. The Defendants' policy has been to devote insufficient resources to the payroll accounting function and/or to insufficiently fund the Production, with the inevitable result that employees are routinely paid in tardy fashion, in violation of sections 201.3, 201.5, 203, 204 and/or 204b of the Code, and otherwise in violation of the Code.

34.     In no event should Plaintiff or Class Members have been paid later than the time periods established by sections 201.3, 201.5, 204 and/or 204b of the Code, but certain payments to Plaintiff were made after they were due, all leading to penalties and civil penalties under sections 203 and 204 and/or 204b of the Code.

35.     At all times relevant herein, section 210 of the Code provided:

> In addition to, and entirely independent and apart from, any other penalty provided in this article, every person who fails to pay the wages of each employee as provided in Sections 204, 204b, 204.1, 204.2, 205, 205.5, and 1197.5, shall be subject to a civil penalty as follows: (a) For any initial violation, one hundred dollars ($100) for each failure to pay each employee; (b) For each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld.

Code § 210. With respect to their obligations to Yearwood and many of the crew, Defendants violated section 210. Defendants' policy has been to devote insufficient resources to the payroll accounting function, with the inevitable result that a number of employees are routinely paid in tardy fashion, in violation of sections 201.3, 201.5, 203, 204 and/or 204b of the Code, and otherwise in violation of the Code.

36.     Code sections 226.7, 512 and Sections 4 and 12 of the Wage Order require an employer to pay an additional hour of compensation for each meal period the employer fails to provide. Section 11 of Wage Order 12 requires that "No employer shall employ any person for a work period of more than six (6) hours without a meal period of not less than thirty (30) minutes, nor more than one (1) hour. Subsequent meal period for all employees shall be called not later than six (6) hours after the termination of the preceding meal period." Defendants failed to maintain a policy informing all Class Members of these rights and failed to fulfill their obligations under section 7 of the Wage Order, requiring employers to maintain "accurate information with respect to each employee including the following: . . . [t]ime records showing when the employee begins and ends each work period. Meal

periods . . . and total daily hours worked shall also be recorded."

37. Here, Defendants failed to apprise many Class Members of their rights associated with meal periods and failed to provide timely uninterrupted meal periods. Defendants have had a consistent policy of: (1) requiring many Class Members to take late meal breaks that occurred after the first 6 hours of each shift; (2) requiring many Class Members to work shifts over 12 hours without providing a second meal period of 30 minutes in length; and (3) failing to pay such employees 1 hour of pay at the employees regular rate of compensation for each workday in which a proper meal break was not provided. At all relevant times mentioned herein, section 226.7 of the Code provided:

(a)  As used in this section, "recovery period" means a cooldown period afforded an employee to prevent heat illness.

(b)  An employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health.

(c)  If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided.

Code § 226.7.

38. At all relevant times mentioned herein, section 226 of the Code provided:

(a) Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided, that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, except that by January 1, 2008, only the last four digits of his or her social security number or an employee identification number other than a social security number may be shown on the itemized statement, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.  The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the

13
FIRST AMENDED CLASS ACTION COMPLAINT

employer for at least three years at the place of employment or at a central location within the State of California.

. . . .

(e) An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

. . . .

(g) An employee may also bring an action for injunctive relief to ensure compliance with this section, and is entitled to an award of costs and reasonable attorney's fees.

Code § 226.

39.     Defendants employed Plaintiff and Class Members, but, in all cases, Defendants failed to provide many of them with the data required by section 226(a) of the Code. Defendants did not provide a wage statement which stated all accrued premium wages owing for missed meal periods and rest breaks.  The wage statement failed to report accrued premium wages owing for non-provision of compliant rest periods.  Specifically, the wage statements did not reflect the correct premium wages owed for missed, late, or shortened rest breaks, as required by law.  All the foregoing was intentional misconduct of Defendants that injured Plaintiff and Class Members insofar as they were subjected to confusion and deprived of information to which they were legally entitled. See Exhibit 4.

40.     A number of Class Members were not timely paid proper overtime wages to which they were entitled in violation of Code §§ 510, 515 and 1194.  Both late payment and nonpayment of overtime wages for all hours worked violates the overtime wage statute.  Defendants illegally rounded the start and end times for their employees, as well and the start and end times for meal periods. Defendants may be subject to the civil penalties for which provision is made in Code § 558.1 by failing to pay the affected Class Members their overtime wages, for when the beginning of a work period is rounded up, or the end of a work period is rounded down, the worker is generally deprived of overtime wages. At all relevant times mentioned herein, section 510(a) of the Code provided:

Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of at least one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee. Nothing in this section requires an employer to combine more than one rate of overtime compensation in order to calculate the amount

to be paid to an employee for any hour of overtime work. Code § 510.

41. Defendants used an improper rounding scheme when tracking employee hours worked, with the inevitable result of shortchanging workers' overtime pay. A number of Class Members were not timely paid proper overtime wages to which they were entitled in violation of Code §§ 510, and 1194. Both late payment and nonpayment of overtime wages for all hours worked violate the overtime wage statute. Defendants are subject to the penalties for failing to pay the affected Class Members their overtime wages. When working on set at a novel location, crew are provided a "start time" yet they are unfamiliar with the location and also directed to use specific areas in which to park, areas which are remote from the base camp to which they are required to report at or before the start time. Since they are under the employers' control for the time required to go from the required parking area to the base camp, the time to walk (or to be transported in employer-provided vans) from their car to the base camp is uncompensated and becomes unpaid time, entitled to be compensated, generally at an overtime or double time wage rate. Similarly, artificial "wrap times" are set for the end of the day, and crew are expected to work until that time, again working off the clock during the period between wrap and the time when they are able to return to the preassigned parking area, again, often extended by time waiting for company vans to transport them to remote parking facilities.

42. Section 512(a) of the Code provides, in part: "(a) An employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes." Section 512(b)(1) of the Code provides, in part: "the Industrial Welfare Commission may adopt a working condition order permitting a meal period to commence after six hours of work." Code § 512(a) and (b)(1). No six hour meal period rule applies to temporary employees such as Plaintiff and many of the motion picture class members.

43. At all relevant times mentioned herein, section 1194 of the Code provided:

Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

Code § 1194.

44.    At all relevant times mentioned herein, section 2802 of the Code provided in part:

(a)    An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties . . .
(b) All awards made by a court . . . for reimbursement of necessary expenditures under this section shall carry interest at the same rate as judgments in civil actions. Interest shall accrue from the date on which the employee incurred the necessary expenditure or loss.
(c) For purposes of this section, the term "necessary expenditures or losses" shall include all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing rights granted by this section.

Code § 2802.

45.    Defendants failed to reimburse Plaintiff and many Class Members for necessary business expenses incurred in the performance of their duties, such as for the acquisition and use of a personal cell phone and for other equipment and supplies. Many Class Members are required to use cell phones for onboarding; preparation of timecards; telephone calls; texts; emails; GPS navigation information; taking work related photographs and other routine, on-the-job communications.

46.    As part of the implied employment contracts between each Plaintiff and many Class member, on the one hand, and Defendants, on the other, the Parties agreed that the employees would promptly respond to any cellphone or walkie talkie calls they received, and Plaintiff and many Class Member routinely did so, whether or not on a faux "rest break" or "meal period," whether or not "on the clock" or before call time or after wrap.

47.    Most major producers reimburse workers for their expense in acquiring and maintaining personal cellphones. See **Exhibit 6**, a partially redacted group exhibit showing such daily reimbursements by other motion picture companies in Los Angeles County.

48.    It is "an employer's duty . . . to maintain accurate records of its employees' hours" and that duty "is non-delegable." Kuebel v. Black & Decker Inc., 643 F.3d 352, 363 (2d Cir. 2011). Although Kuebel establishes that it is solely the employer's duty to keep track of hours worked under the federal FLSA, and although Plaintiffs' wage-and-hour claims are largely brought under the state law, the fact remains that Defendants, always, were subject to the FLSA and therefore were themselves required to keep track of Plaintiffs' hours worked. See Troester v. Starbucks Corp., 5 Cal. 5th 829, 839 (2018) (explaining that, although California's wage-and-hour laws are "more protective than federal law" and that "California is free to offer [employees] greater protection," the FLSA "provide[s] a level

16
FIRST AMENDED CLASS ACTION COMPLAINT

of employee protection that a state may not derogate"). Troester, 5 Cal. 5th at 846 ("Nor is it clear why, when it is difficult to keep track of time worked, the employee alone should bear the burden of that difficulty"), 848 ("An employer may be able to customize and adapt available time tracking tools or develop new ones when no off-the-shelf product meets its needs. And even when neither a restructuring of work nor a technological fix is practical, it may be possible to reasonably estimate work time . . . and to compensate employees for that time."). Marlo v. United Parcel Serv., Inc., No. CV 03-04336 DDP (RZx), 2009 WL 1258491, at *3 (C.D. Cal. May 5, 2009), explains that, under California law, "employers must keep track of the hours . . . employees work." Before an employee starts to work for an employer, the employer is required to have the employee fill out the requisite new-hire paperwork. See e.g. Ketchikan Drywall Servs., Inc. v. Immigration & Customs Enforcement, 725 F.3d 1103, 1113 (9th Cir. 2013) (stating that 8 U.S.C. § 1324a "clearly makes employers responsible for documenting employee work authorization" and that, "[w]here [a defendant] cho[oses] to hire employees who ha[ve] failed to fill out [s]ection 1 [of I-9 Forms] completely, it d[oes] so at its own peril"); 26 C.F.R. § 31-3402(f)(2)-1 subsec. (a) (stating that a withholding-exemption certificate must be completed "[o]n or before the date on which an individual commences employment"); 22 Cal. Code Regs. § 4340-1(a) stating that a withholding-exemption certificate must be completed "[o]n or before the date on which an individual commences employment"). If, for example, the employee fails to complete the necessary tax documents, the employer must follow the guidance from the Internal Revenue Service and the California Employment Development Department by withholding taxes as if the employee is single with no withholding allowances. See Internal Revenue Serv., *Topic Number 753 – Form W-4 – Employee's Withholding Allowance Certificate* (last updated Mar. 1, 2018), https://www.irs.gov/ taxtopics/tc753. There is an analogous cite from the California EDD (re defaulting to the single-no-allowances rule): Cal. Emp't Dev. Dep't, *Employer's Obligations for Form W-4 or DE 4* (2016), https://www.edd.ca.gov/ pdf_pub_ctr/de71.pdf).

49.     As part of the employment contracts between many Class Members, on the one hand, and Defendants, on the other, the Parties agreed that their contract had an implied covenant of good faith and fair dealing.

50.     As part of the implied employment contracts between many Class Members, on the one

hand, and Defendants on the other, when filming within the jurisdictions subject to FilmLA, in which, on information and belief, perhaps half of the Productions here at issue were filmed, the Parties agreed that the employees would abide by the conditions in the FilmLA Film Permits issued to Defendants, permitting the scheduled work.  Those Film Permits routinely required compliance with a "FilmLA Filmmakers' Code of Professional Responsibility" (the "LA Code"), a copy of the version issued in 2019 is attached hereto as **Exhibit 7**.

> 1.  The production company must comply with the provisions of the film permit at all times.
> 2.  The Filmmakers' Code of Professional Responsibility will be attached to every permit, and both must be shown to any member of the public that asks to see them.
> 3.  Productions arriving on-location in or near a residential neighborhood shall enter the area no earlier than the time stipulated on the permit.
> . . .
> 5.  Cast and crew must observe designated parking areas. Parking of cast and crew vehicles on public streets is prohibited unless authorized by the film permit.
> 6.  Parking on both sides of public streets is prohibited unless specifically authorized by the film permit.
> 7.  Production vehicles may not block driveways without the express permission of the local municipality or the driveway owner.

Exhibit 7 (https://filmla.com/wp-content/uploads/2019/07/Filmmakers-code-of-coduct-2019.pdf., last accessed August 2, 2024).

51.     Another, later version issued by FilmLA is to the same effect. **Exhibit 8**, for example, states:

> Meals must be confined to the area designated in the location agreement or permit. Individuals must eat within the designated meal area.

Exhibit 8, ¶ 6.

52.     In addition, there is a "California Film Commission Filmmakers Code of Conduct" (the "CA Code") such as attached hereto as **Exhibit 9**. That CA Code provides, in part, that worker activity before the start of the day is regulated, but in this case the workers were not paid for this off the clock time, most of which should have been compensated as overtime, as work compensated days are routinely at least 8 hours:

> 2. Production vehicles arriving on location in or near a residential neighborhood should not enter the area before the time stipulated in the permit, should park one by one, and turn off engines as soon as possible. Cast and crew should observe designated parking areas.

Exhibit 9, p. 1 (https://cdn.film.ca.gov/wp-content/uploads/2020/11/Professional-Filmmakers-Code-of-Conduct.pdf).

53.    As part of the implied employment contracts between Plaintiff and many Class members, on the one hand, and Defendants on the other, the Parties agreed that all employees, whether or not in a union, would honor calls for "grace" to permit filming to continue beyond the sixth or twelfth hour of work as the case may be, and Plaintiff and Class Member routinely did so, whether or not a meal break had been scheduled.  The applicable CBA for union members working on commercials provides that "[t]he first deductible meal period may be extended by fifteen (15) minutes to complete a set-up and a second deductible meal period may be extended by thirty (30) minutes to complete a set up and/or wrap."[3] These provisions do not apply to non-union workers such as Plaintiff, yet industry practice demands all workers follow the procedures for grace.  In any event, grace is routinely called, and non-union workers have their meals often delayed beyond the sixth hour of work, without compensation by the Defendants for such untimely meals. Defendants regularly record-keeping procedures note when grace is called, and during discovery these materials will be accessed so that Plaintiff might amend this Complaint to articulate precise details relating to these practices.

54.    As part of the implied employment contracts between many Class Members, on the one hand, and Defendants on the other, the Parties agreed that all such employees would remain on or near the designated set, from their initial report time until final wrap for the day. According to the Commercial Filmmakers' Code of Professional Responsibility: "5. Cast and crew meals shall be confined to the area designated in the location agreement or permit."  **Exhibit 10**, https:// aicp.com/ assets/editor/AICP_ Location_Code_of_Professional_Responsibility_members_June2017.pdf (last accessed August 2, 2024). This policy and practice is articulated in the LA Code:

> Cast and crew are to remain on or near the area that has been permitted. . . .
> . . .
>  If not specified in the permit, an area for meal service and consumption must be designated.

---

[3] See 2019 Commercial Production Agreement and Northeast Corridor Appendix [the I.A.T.S.E [the International Alliance Of Theatrical Stage Employees, Moving Picture Technicians, Artists And Allied Crafts Of The United States And Canada, AFL-CIO, CLC – A.I.C.P. [Association Of Independent Commercial Producers, Inc.,], Article XVIII- MEALS, Section 3, p. 11.

**Exhibit 10**. ¶ 9.

55.   A Warner Bros. "Filmmakers Code of Professional Responsibility" provides, in part, that:

"5. Cast and crew meals shall be confined to the area designated in the location agreement or permit. Individuals shall eat within their designated meal area, during scheduled crew meals."  Further:  "11. . . . Remain within the boundaries of the property that has been permitted for filming."

**Exhibit 11**.

56.   **Exhibits 7-11** reflect industry practices in the filming of Motion Pictures in California, both television commercials and otherwise. Plaintiff and class members were aware of and followed the Code rules (adopted by the employers) requiring that they remain on set, even during faux rest breaks and meal periods.

57.   At all relevant times mentioned herein, section 558 of the Code provided:

Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows:  (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.  (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (3) Wages recovered pursuant to this section shall be paid to the affected employee.

Code § 558.

58.   At all relevant times mentioned herein, section 558.1 of the Code provided:

(a) Any employer or other person acting on behalf of an employer, who violates, or causes to be violated,  any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation.
(b) For purposes of this section, the term "other person acting on behalf of an employer" is limited to a natural person who is an owner, director, officer, or managing agent of the employer, and the term "managing agent" has the same meaning as in subdivision (b) of Section 3294 of the Civil Code.
(c) Nothing in this section shall be construed to limit the definition of employer under existing law.

Code § 558.1.

59.   The Individual Defendant, as a responsible manager of PPLLC, oversees PPLLC's operations. Plaintiff alleges that the Individual Defendant implemented and/or enforced the policies and practices that led to the violations of Code §§ 203, 226, 226.7, 1194, and 2802 referenced herein. The Individual Defendant and/or others under his direction was physically present on set during the

20

FIRST AMENDED CLASS ACTION COMPLAINT

productions, actively participating in or maintaining authority over the productions' operations.

60. The Individual Defendant, as an owner, officer, and/or managing agent of PPLLC, caused the violations articulated herein. The Individual Defendant directly and/or indirectly controlled the Class Members' wages, working conditions, and hours and were responsible for the policies or lack of policies that resulted in the Code violations outlined herein, including violations of Code §§ 203, 226, 226.7, 1194, and 2802.

61. Upon information and belief, PPLLC and the Individual Defendant were joint employers and/or persons acting on behalf of the employer within the meaning of Code § 558.1. The Individual Defendant exercised control over PPLLC's payroll practices, compensation policies, and employment-related financial decisions. The Individual Defendant and/or others acting under his direction, supervised Class Members' day-to-day work, including scheduling, oversight, and enforcement of working conditions during production. The Individual Defendant was personally involved in creating, approving, or maintaining the unlawful wage-and-hour policies, or lack of policies that resulted in the Labor Code violations alleged herein.

62. An unknown entity and/or its advertising agency was the client employer of Plaintiff and Class Members, and Defendants were the labor contractors.

## CLASS-ACTION ALLEGATIONS

63. Plaintiff brings this action on behalf of himself, and all others similarly situated as a class action pursuant to section 382 of the Code of Civil Procedure. Plaintiff seeks to represent a Class composed of and defined as follows:

> Save for full-time Staff personnel, all persons (including both exempt and non-exempt and union and non-union employees, as well as those working through Loan-Out companies) paid wages on account of services provided for Defendant in the production of Still Photography and/or Motion Pictures in California during the period beginning no earlier than four years prior to the filing hereof to the date of a decision on a Motion for Class Certification (such persons are referred to as "Class Members," and such period is referred to hereafter as the "Class Period").

64. Plaintiff reserves the right under Rule 3.765, California Rules of Court, to amend or modify this class description with greater specificity or further division into subclasses or limitation to particular issues. This action has been brought and may be properly maintained as a class action under the provisions of section 382 of the Code of Civil Procedure because, with respect to the proposed Class,

21
FIRST AMENDED CLASS ACTION COMPLAINT

there is a well-defined community of interest in the litigation, and the proposed Class is readily ascertainable.

65.    Defendants, as to Plaintiff and many Class Members, failed to pay all accrued overtime for all hours worked pursuant to sections 510 and 1194 of the Code. Accordingly, each Plaintiff and Class Member is entitled to payment of his or her unpaid overtime and interest as well as reimbursement of their attorneys' fees and reasonable costs.

66.    Defendants, as to Plaintiff and many Class Members, also failed to accurately provide the data required by section 226(a) of the Code and, accordingly, Defendants' failure to provide such data entitles Plaintiff and each Class Member to either actual damages or statutory liquidated damages, whichever is greater. See, e.g., Naranjo v. Spectrum Security Services, Inc., 15 Cal. 5th 1056, 1068 (2024) ("section 203 and section 226 claims can be brought based on unpaid and unreported missed-break premium pay.")

67.    Defendants, as to Plaintiff and many Class Members, failed to timely compensate the workers as required by sections 201.3, 201.5, 203, 204 and/or 204b of the Code and, accordingly, Defendants' failure to make timely payment entitles Plaintiff and each Class Member to statutory penalties and/or damages.

68.    Defendants, as to Plaintiff and many Class Members, failed to provide meal and rest breaks as required by sections 226.7, 512 of the Code and Wage Order 4 and/or 12, and, accordingly, Defendants' failure to provide meal and rest breaks entitles Plaintiff and Class Members to actual damages and/or statutory damages.

A.    **Numerosity**

69.    The potential members of each Class as defined are so numerous that joinder of all the members of the Class is impracticable. While the precise number of Class Members has not been determined at this time, Plaintiff is informed and believes that Defendants employed during the relevant time periods at least fifty workers in the State of California. The number of Class Members is great, but not so great as to make the class unmanageable. It therefore is impractical to join each Class Member as a named plaintiff. Accordingly, utilization of a class action is the most economically feasible means of determining the merits of this litigation.

70.     Despite the size of the proposed Class, the Class Members are readily ascertainable through an examination of the records that Defendants and/or their payroll companies are required by law to keep. Likewise, the dollar amount owed to each Class Member is readily ascertainable by an examination of those same records.

**B.     Commonality**

71.     There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    a. Whether Defendants failed to pay all wages in a timely fashion upon the discharge of their workers, all in violation of sections 201.3, 201.5, 203, 204, and/or 204b of the Code.

    b. Whether Defendants' failure to provide accurate itemized wage statements to their workers violates section 226(a), as required by the Code as well as Wage Orders 4 or 12.

    c. Whether Defendants failed to provide rest breaks to their workers, as required by the Code as well as Wage Orders 4 or 12.

    d. Whether Defendants failed to pay proper minimum wages to their workers under Code sections 1194 and 1194.2, as well as Wage Orders 4 or 12.

    e. Whether Defendants failed to pay proper overtime wages to their workers Production under Code sections 510, and 1194, as well as Wage Orders 4 or 12.

**C.     Typicality**

72.     There is a well-defined community of interest in the questions of law and fact common to the Class Members.

73.     The claims of the named Plaintiff are typical of the claims of the Class, which claims all arise from the same general operative facts, namely, Defendants did not compensate a number of their employees as required by the Code and applicable Wage Order. Plaintiff and all members of the Class sustained injuries and damages arising out of and caused by the Defendants' common course of conduct in violation of laws, regulations that have the force and effect of law, and statutes as alleged herein. Plaintiff has no conflict of interest with the other Class Members and can represent the Class Members' interests fairly and adequately.

**D.     Adequacy of Representation**

74.     Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. The counsel who represent Plaintiff are competent and experienced in litigation large

employment class actions. E.g., Bithell v. E.P. Mgmt. Servs., 2007 Cal. App. Unpub. LEXIS 9706, *3 (2006). Neither Plaintiff nor Plaintiff's counsel have any conflict with the Class.

**E.     Superiority of Class Action**

75.     A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all Class Members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. Many members of the Class have been damaged and are entitled to recovery by reason of Defendants' illegal policy and/or practice of failing to pay hourly wages, failing to pay overtime wages, failing to provide Class Members rest and meal periods without legal compensation. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. The Plaintiff is unaware of any difficulties that are likely to be construed in the management of this action that would preclude its maintenance as a class action. The disposition of all claims of the members of the Class in a class action, rather than in individual actions, benefits the parties and the Court. The interest of the Class Members in controlling the prosecution of separate claims against Defendants is small when compared with the efficiency of a class action.

## COLLECTIVE ACTION ALLEGATIONS

76.     Plaintiff seeks to represent all employees (whether or not in a union, whether or not working with a loan-out company, whether exempt or non-exempt) during the period beginning no earlier than three years prior to the filing hereof to such date as the Court deems appropriate (such persons are referred to hereafter as "Collective Action Members."

77.     Plaintiff is similarly situated to the Collective Action Members in that Plaintiff and the Collective Action Members were employed by Defendants and in that Defendants did not pay Plaintiff and the Collective-Action Members their overtime and/or minimum wages when due.

78.     This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b).

79.     All Collective-Action Members should be given notice and be allowed to given their consent in writing to participate in—in other words, to opt into—the collective action pursuant to 29

U.S.C. § 216(b).

**FIRST CAUSE OF ACTION**
(Continuing Wages, Code § 201.3, 201.5, 203, 204 and/or 204b
On Behalf of Plaintiff and the Class Against All Defendants)

80.     Plaintiff realleges and incorporates herein by reference the allegations contained in this Complaint as though fully set forth herein.

81.     Defendants employed Plaintiff, yet the Plaintiff was not paid all wages accrued upon separation from employment.

82.     Plaintiff and a number of Class Members consistently worked more than 6-hour and/or 12-hour shifts. However, many were required to keep their walkie talkies, radios and/or cell phones on their persons, turned on and audible at all times, including during their rest periods and meal breaks and/or they were precluded from leaving the set and its immediate environs during their breaks, all due to the requirements of industry practice as detailed in Exhibits 7-11.  Accordingly, they were denied their breaks and are entitled to an additional thirty minutes of wages for each faux meal break, funds which remain unpaid.

83.     Defendants' failure to compensate Plaintiff and Class Members within the time for which provision is made by sections 201.3, 201.5, 203, 204 and/or 204b of the Code, despite their knowledge of their obligation to do so, was and is "willful" as the word is used in section 203.

84.     Pursuant to section 203 of the Code, Plaintiff and Class Members are entitled to continuing wages from Defendants in an amount according to proof, and Plaintiff and Class Members are entitled to such penalties in the amount of at least $350,000. Plaintiff and Class Members are also entitled to recover costs and reasonable attorneys' fees under section 218.5 of the Code.

**SECOND CAUSE OF ACTION**
(Failure to Provide Compliant Pay Stubs, Code § 226(a)
On Behalf of Plaintiff and the Class Against Defendants)

85.     The Plaintiff incorporates by reference each and every allegation set forth in this Complaint as though fully set forth herein.

86.     Defendants failed to provide Plaintiff and Class Members with wage statements conforming to the requirements of section 226(a) of the Code. For a majority of the workers, the wage

25
FIRST AMENDED CLASS ACTION COMPLAINT

statements failed to report all accrued premium wages owing on account of missed, tardy or truncated rest breaks; failed to report gross or net wages earned; and failed to report all hours worked and rates.

87.    The foregoing was intentional misconduct of Defendants that injured Plaintiff and Class Members insofar as they were deprived of information to which they were legally entitled, including but not limited to all applicable hourly rates in effect during the pay period and, inter alia, due to their illegal rounding practices, the corresponding number of hours worked at each hourly rate by the employee.

88.    The failure of Defendants to provide compliant wage statements violates section 226(a) of the Code. Accordingly, Plaintiff and Class Members are entitled to damages in an amount according to proof and costs and reasonable attorney's fees in accordance with the provisions of Code section 226(e), all according to proof, of not less than $1,000. The Plaintiff is entitled to an amount according to proof of at least $50, not including interest thereon, reasonable attorneys' fees and cost of suit.

### THIRD CAUSE OF ACTION
(Failure to Provide Meal Periods or Rest Breaks, Code § 226.7, 512 and
IWC Wage Orders 4 or 12
On Behalf of Plaintiff and the Class Against Defendants)

89.    The Plaintiff incorporates by reference each allegation set forth in this Complaint as though fully set forth herein.

90.    At all times relevant, sections 226.7 of the Code and IWC Wage Order 12 provided that employees must receive rest periods of at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof.

91.    By its failure to provide required rest breaks to Plaintiff and many Class Members, Defendants willfully violated the provisions of Code sections 226.7, 512 and IWC Wage Orders 4 or 12.

92.    The Plaintiff and many Class Members were not permitted to leave the set of the Production for any purported rest periods. The Plaintiff and many Class Members were required to always be available via radio or cell phone.

93.    Because Defendants failed to properly provide the proper rest breaks, it is liable to Plaintiff and Class Members for one hour of additional pay at the regular rate of compensation for each

workday that the proper rest breaks were not provided, pursuant to Code section 226.7, 512 and IWC Wage Order 4 or 12.

94.     As a result of the unlawful acts of the Defendants, Plaintiff and many Class Members have been deprived of premium wages, and/or other compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, plus interest thereon, fees, and costs.

**FOURTH CAUSE OF ACTION**
(Damages for Unpaid Overtime Compensation and Minimum Wages,
Code §§ 510, 558.1, 1194, 1194.2 and 1198.
On Behalf of Plaintiff and the Class Against All Defendants)

95.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in this Complaint as though fully set forth herein.

96.     In part, due to Defendants' illegal rounding policy, during Plaintiff's employment by Defendants, Plaintiff, as well as many Class Members, worked many hours, often overtime or double time, without proper compensation for work performed, as required by law.

97.     Plaintiff and such Class Members are entitled to recover such unpaid overtime and minimum wages, as well as liquidated damages, under sections 1194, 1194.2 and 1198 of the Code in an amount according to proof, of not less than $5,000. Both delinquent payment and non-payment of minimum wages violate the state statute requiring the payment of a minimum hourly wage. See, Biggs v. Wilson, 1 F.3d 1537 (9th Cir. 1993).

98.     The Plaintiff and Class Members are entitled to recover costs and reasonable attorneys' fees under section 1194 of the Code.

**FIFTH CAUSE OF ACTION**
(Failure to Reimburse Necessary Expenses, Code §2802
On Behalf of Plaintiff and the Class Against All Defendants)

99.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in this Complaint as though fully set forth herein.

100.     In discharge of their duties, Defendants required Plaintiff and many Class Members to make purchases, maintain and/or rent equipment for their work on the set of a motion picture. Plaintiff and a number of Class Members were required to acquire and use their personal cellphones and/or computer equipment, but Defendants did not reimburse the workers for such use.

FIRST AMENDED CLASS ACTION COMPLAINT

101.    Pursuant to section 2802 of the Code, Plaintiff and such Class Members are entitled to reimbursement of their out-of-pocket expenses from Defendants and damages in addition to interest thereon, attorney's fees and costs.

102.    "The purpose of this statute is to prevent employers from passing their operating expenses on to their employees." Cochran v. Schwan's Home Serv., Inc., 228 Cal.App.4th 1137, 1144 (2014) (internal quotation marks and citation omitted). The employer's duty to reimburse its workers is triggered if the employer knew or had reason to know the employee has incurred an expense. Stuart v. Radioshack Corp., 641 F. Supp. 2d 901, 904 (N.D. Cal. April 30, 2009). "Once the employer has such knowledge, then it has the duty to exercise due diligence and take any and all reasonable steps to ensure that the employee is paid for the expense." Id.

103.    Code section 2802(c) provides, in part, that "the term 'necessary expenditures or losses shall include all reasonable costs, including but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section."

104.    Code section 2804 mandates that this statutory right cannot be waived: "Any contract or agreement, express or implied, made by any employee to waive the benefits of this article or any part thereof, is null and void, and this article shall not deprive any employee or his personal representative of any right or remedy to which he is entitled under the laws of this State." Code § 2804.

105.    Plaintiff and Class Members are entitled to recover their unreimbursed expenses in an amount according to proof.  Plaintiff and such Class Members are also entitled to recover costs and reasonable attorneys' fees under section 2802(c) of the Code.

### SIXTH CAUSE OF ACTION
(Unfair Business Practices Business and Professions Code section 17200 *et seq.*
On Behalf of Plaintiff and the Class Against All Defendants)

106.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in this Complaint as though fully set forth herein.

107.    Business and Professions Code section 17200 *et seq.* prohibits acts of unfair competition, including any "unlawful, unfair, or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200 *et seq.*  Plaintiff alleges that Defendants engaged in unfair business practices in California by the above-described failure to timely pay many Class Members their wages due including overtime wages.

108.   Defendants' violation of California wage and hour laws as herein articulated constitutes a business practice because Defendants' acts and omissions were done repeatedly over a significant period, and in a systematic manner, to the detriment of Plaintiff.

109.   As a result of Defendants' unfair and unlawful business practices, Defendants have reaped unfair and illegal profits during the relevant time herein at the expense of Plaintiff, many of the Class Members and members of the public.  Defendants should be made to disgorge their ill-gotten gains and to restore them to Plaintiff and such Class Members.

110.   The actions of Defendants entitle Plaintiff to seek the remedies available under section 17200 *et seq.* Plaintiff seeks full restitution of said amounts from Defendants, as necessary and according to proof, to restore all amounts—including interest—withheld, acquired, or converted by Defendants by means of the unfair practices complained of herein.  Plaintiff, on behalf of themselves, as well as on behalf of the general public, further seeks attorney fees and costs pursuant to sections 218.5 of the Code and 1021.5 of the Code of Civil Procedure.  In addition, the Plaintiff seeks the appointment of a receiver, as necessary.

**SEVENTH CAUSE OF ACTION**
(Breach of Contract of Employment on behalf of Plaintiff
and Class Members Against All Defendants)

111.   Plaintiff repleads, realleges, and incorporates by reference each allegation set forth in the Complaint.

112.   In this matter, unlike many other motion pictures, there was no explicit written contract of employment between Plaintiffs and Class Members on the one hand, and Defendants on the other.

113.   "A cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct." Yari v. Producers Guild of Am, Inc. 161 Cal. App. 4th 172, 182 (2008).

114.   The elements of a cause of action for breach of contract are: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." Coles v. Glaser, 2 Cal. App. 5th 384, 391 (2016).

115.   Every implied contract for employment within California incorporates by implication the requirements of the FLSA and the Code.

FIRST AMENDED CLASS ACTION COMPLAINT

116.   Plaintiff and many Class Members diligently worked for Defendants and fulfilled their obligations under their contracts of employment.  Defendants breached their implied contracts of employment with Plaintiff and the many Class Members when they: (1) failed to provide Notice of the Plaintiffs' and Class Members' right to additional wages on account of the alleged failure to pay premium wages for faux rest breaks, much less pay such wages; (2) failed to compensate Plaintiffs and Class Members for their use of personal cell phones and/or computer equipment; (3) failed to timely pay for all hours worked, never paying premium wages for faux rest breaks, routinely using illegal rounding, deducting exactly thirty or exactly sixty minutes for faux meal periods, often paying wages more than a week after the promised and legally required "next week" – instead paying many days late, often beyond even the extended times permitted by the Code.

## EIGHTH CAUSE OF ACTION

(FLSA on behalf of Plaintiff and Collective Action  Members Against All Defendants)

117.   Plaintiff repleads, realleges, and incorporates by reference each allegation set forth in the Complaint.

118.    Plaintiff is informed and believes, and on that basis alleges, that Defendants are employers engaged in an enterprise in interstate commence pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.  The annual budgets for Defendants' productions were in excess of $500,000.

119.   Plaintiffs and other defense Employees were not timely paid the minimum wage on the defense productions.

120.   Under 29 U.S.C. §§ 207(a) and 216(b), Plaintiffs are entitled to recover from Defendants their liquidated damages and/or unpaid wages for hours worked, as well as costs and attorney's fees.

121.   Defendants failed to compensate Plaintiffs as required by 29 U.S.C. §§ 207(a) and 216(b).

122.   Defendants' violations of 29 U.S.C. § 207 were willful and intentional.

123.   Plaintiff is entitled to damages for unpaid wages and/or the associated liquidated damages in an amount to be proven at trial.

124.     Plaintiff  brings this claim on a collective-action basis pursuant to the FLSA. Plaintiff's consent to bring this FLSA action is attached hereto as **Exhibit 13**.

125.     The FLSA permits an employee to bring an action for unpaid wages on "behalf of himself . . . and other employees similarly situated," so long as all similarly situated employees "give[] [their] consent in writing to become . . . a party." 29 U.S.C. § 216(b). Pursuant to the FLSA, Plaintiff seeks to represent a Collective Action.**WHEREFORE**, Plaintiff prays judgment as follows:

1.     That the Court certifies a Class Action and/or Collective Action.

2.     That, under the First Cause of Action, it be adjudged that the failure of Defendants to make payment of Plaintiff's and Class Members' wages was in violation of section 201.3, 201.5, 203, 204 and/or 204b of the Code, and was "willful" as that word is used in section 203 of the Code, and that the Court enter judgment against Defendants in favor of Plaintiff and Class Members.  This Court should enter judgment in favor of Plaintiff and the Class, in the amount of not less than $350,000, and costs and reasonable attorneys' fees in accordance with the provisions of Code section 218.5.

3.     That, under the Second Cause of Action, Code § 226(a), Failure to Provide Compliant Wage Statements, and Wage Orders 4 and/or 12, this Court enter judgment in favor of Plaintiff, in an amount of at least $50, not including interest thereon, reasonable attorneys' fees and cost of suit, and enter judgment in favor of the Class Members against Defendants in the amount of damages, interest, and costs, according to proof, and costs and reasonable attorneys' fees in accordance with the provisions of Code section 226(e).

4.     That, under the Third Cause of Action, Code §§ 226.7, 512 and Wage Orders 4 and/or 12, Failure to Provide Rest Breaks and Meal Periods, this Court enter judgment in favor of Plaintiff and the Class Members and award them their damages, penalties, and costs of suit, all according to proof, pursuant to section 218.5 and other relevant sections of the Code.

5.     That, under the Fourth Cause of Action, Code § 510, 1194, 1194.2, 1198  and Wage Orders 4 and/or 12,  Failure to Provide Pay Proper Overtime and Minimum wages, this Court enter judgment in favor of Plaintiff and Class Members in the amount of unpaid overtime wages according to proof, including interest thereon, reasonable attorneys' fees and cost of suit, and enter judgment against Defendants in the amount of damages according to proof, interest thereon, reasonable attorneys' fees

31
FIRST AMENDED CLASS ACTION COMPLAINT

and cost of suit.

6.      That, with respect to the Fifth Cause of Action, Code § 2802 and Wage Orders 4 and/or 12, Failure to Reimburse Business Expenses, this Court enter judgment in favor of Plaintiff and Class Members against all Defendants in an amount according to proof, no less than three dollars, interest thereon, costs and reasonable attorney's fees in accordance with Code section 2802(c).

7.      That, with respect to the Sixth Cause of Action, it be adjudged that Defendants' violations of the applicable Wage Order and above cited sections of the Code and violated section 17200 *et seq.* of the California Business and Professions Code. Accordingly, Plaintiff requests that the Court order Defendants to pay restitution with interest to Plaintiff and the Class Members.  In addition, Plaintiff requests that the Court award Plaintiff's reasonable attorneys' fees and costs, pursuant to section 218.5 of the Code and section 1021.5 of the California Code of Civil Procedure.

8.      That, with respect to the Seventh Cause of Action, Breach of Implied Employment Contract, this Court enters judgment in favor of Plaintiff and Class Members against all Defendants in an amount according to proof, interest thereon, costs and such other reasonable relief as may be appropriate in the circumstance.

9.      For such further relief as the Court may order, including attorney's fees, costs, and interest pursuant to Code sections 218.5 and 218.6, and Code of Civil Procedure section 1021.5, in an amount according to proof.

DATED:  June 16, 2026

Respectfully submitted,

HARRIS & RUBLE

*Alan Harris*

Alan Harris
*Attorney for Plaintiff*

FIRST AMENDED CLASS ACTION COMPLAINT

**INDEX TO EXHIBITS**

| | |
|---|---|
| Exhibit 1 | A sample of an ad agency script and storyboards for a television commercial. |
| Exhibit 2 | A partially redacted, typical Association of Independent Commercial Producer's ("AICP") Film Production Cost Summary for a Neutrogena commercial. |
| Exhibit 3 | AICP Bid Form |
| Exhibit 4 | Wage Statement issued to Plaintiff on July 28, 2022 (Partially Redacted). |
| Exhibit 5 | Call sheets with references to walkie channels (Partially Redacted). |
| Exhibit 6 | Cell Phone Maintenance Payments in Los Angeles (Partially Redacted). |
| Exhibit 7 | "FilmLA Filmmakers' Code of Professional Responsibility" (the "LA Code"), the version issued in 2019. |
| Exhibit 8 | "FilmLA Filmmakers' Code of Professional Responsibility" (the "LA Code"), version issued 2021. |
| Exhibit 9 | Ca. Film Commission Code of Professional Responsibility, 11/2020 |
| Exhibit 10 | AICP Code of Professional Responsibility, 2019 |
| Exhibit 11 | Warner Bros. Code of Professional Responsibility |
| Exhibit 12 | FLSA Consent Form |

FIRST AMENDED CLASS ACTION COMPLAINT